**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| BIOVAIL CORP., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| U.S. FOOD AND DRUG | ) | |
| ADMINISTRATION, *et al.*, | ) | Case No. 06-CV-1487 (RMU) |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ANCHEN PHARMACEUTICALS, INC. | ) | |
| | ) | |
| Proposed Intervenor- | ) | |
| Defendant | ) | |

**INTERVENOR-DEFENDANT ANCHEN PHARMACEUTICALS, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

Gordon A. Coffee (D.C. Bar No. 384613)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
202-282-5000 (voice)
202-282-5100 (facsimile)

John E. Mooney (not admitted in D.C.)
Donald J. Mizerk (not admitted in D.C.)
Steven J. Winger (not admitted in D.C.)
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, Illinois 60601
312-558-5600 (voice)
312-558-5700 (facsimile)

Attorneys for Anchen Pharmaceuticals, Inc.

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ...................................................................................................................1

I.   BIOVAIL'S MOTION IS AN IMPROPER ATTEMPT TO DELAY GENERIC
     COMPETITION TO ITS WELLBUTRIN XL PRODUCT. ....................................................1

II.  BIOVAIL HAS NOT DEMONSTRATED ITS RIGHT TO ANY INJUNCTIVE
     RELIEF...........................................................................................................................5

     A.   Biovail is Not Likely To Succeed on the Merits.........................................................5

          1.    The FDA Has Acted Lawfully In Evaluating Biovail's Citizen Petition.....6

          2.    The FDA Would Not Violate Biovail's Due Process Rights If It Decided
                Biovail's Citizen Petition After Approving Anchen's ANDA. ..................9

                a.   Biovail has no "property interest" in the timing of the FDA's
                     decisions...........................................................................................9

                b.   Biovail has already received all of the "process" that it is due. .........10

          3.    The Court's Analysis In TRAC v. FCC Does Not Support Biovail's
                Position and Should Not Be Applied in This Case....................................12

     B.   Biovail's Purported "Irreparable Harm" Is Self-Inflicted, Completely Speculative
          And Unrelated To Any Interest In Having Its Citizen Petition Addressed By
          The FDA. .................................................................................................................13

     C.   The Harm Caused To Others Greatly Outweighs Biovail's Interest In
          Improperly Protecting Its Illicit Monopoly..............................................................16

     D.   The Public Interest Would Be Harmed If Injunctive Relief Is Allowed....................16

CONCLUSION....................................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991) ........................................................17

*Beverly Enters., Inc. v. Hermen*, 130 F. Supp. 2d 1 (D.D.C. 2000)................................9

*Board of Regents v. Roth*, 408 U.S. 564 (1972)................................................................9

*Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212 (D.D.C. 1996)................................ *passim*

*Mathews v. Eldridge*, 424 U.S. 319 (1976)......................................................................10

*Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30 (D.D.C. 2000) .........................14, 16

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55 (2004)..........................................5, 6

*Novartis Pharms. Corp. v. Leavitt*, 435 F.3d 344 (D.C. Cir. 2006)....................7, 10, 11

*Pfizer, Inc. v. Shalala*, 182 F.3d 975 (D.C. Cir. 1999) ...................................................10

*Roth v. King*, 449 F.3d 1272 (D.C. Cir. 1985) ..................................................................9

*Sandoz, Inc. v. FDA*, No. 06-1134 (RCL), 2006 WL 1897728 (D.D.C. July 12, 2006)..........14, 16

*Serono Labs., Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998)........................................6

*Sociedad Anomia Vina Santa Rita v. Dept. of Treasury*, 193 F. Supp. 2d 6 (D.D.C. 2001) .........13

*Telecommunications Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984)...................12

*Town of Castle Rock, Co. v. Gonzales*, 125 S. Ct. 2796 (2005) ......................................9

## STATUTES AND REGULATIONS

5 U.S.C. § 706(1) ...............................................................................................................6

5 U.S.C. § 706(2)(A)...........................................................................................................6

21 U.S.C. § 355(j)(5)(B)(iii)(I) ........................................................................................16

Fed. R. Civ. P. 11(b)(3).......................................................................................................2

21 C.F.R. §10.30..........................................................................................................6, 11

21 C.F.R. § 10.35 ...................................................................................................................11, 13

## INTRODUCTION

This case is *not* about protection of the public from FDA misconduct or from safety risks supposedly associated with generic drugs. Rather, Biovail Corporation (the Canadian manufacturer of WELLBUTRIN XL®) and Biovail Laboratories, SRL (an offshore patent holding company) (collectively, "Biovail") are seeking to protect the financial rewards Biovail derives from a license and distribution agreement with non-party GlaxoSmithKline, the company that actually owns the WELLBUTRIN XL® NDA and markets the product in the United States. Biovail's lawsuit seeks to impose a new legal restriction on FDA concerning the timing of final review of citizen petitions, and request that this Court legislate a new one-week stay provision to allow a period to initiate judicial review. There is no legal, factual or equitable basis to grant Biovail the extraordinary relief that it seeks. Indeed, this Court rejected a request for similar relief ten years ago in *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212 (D.D.C. 1996). Intervenor-Defendant, Anchen Pharmaceuticals, Inc. ("Anchen"), is statutorily entitled to final approval once the District Court in California enters final judgment in the patent litigation that Biovail unsuccessfully prosecuted. No other legal course is permitted.

## I.  BIOVAIL'S MOTION IS AN IMPROPER ATTEMPT TO DELAY GENERIC COMPETITION TO ITS WELLBUTRIN XL PRODUCT.

Biovail's instant lawsuit is simply the latest tactic of a delay strategy aimed at blocking generic competition to the WELLBUTRIN XL® brand product. Any delay is a victory for Biovail in the marketplace, since it extends the period during which its U.S. marketing partner, GlaxoSmithKline (GSK), can sell the WELLBUTRIN XL® brand product without an available generic substitute. The timing of Biovail's citizen petition activity and this lawsuit belie the notion that Biovail is motivated out of an altruistic concern for the public welfare.

Anchen is a start-up pharmaceutical company located in Irvine, California. In September 2004, Anchen filed an Abbreviated New Drug Application (ANDA) seeking FDA approval to market generic bupropion hydrochloride extended release tablets. The reference listed drug for Anchen's ANDA is WELLBUTRIN XL®. A Biovail company manufactures WELLBUTRIN XL® in Canada, and owns certain patents. (Compl. ¶¶ 8 & 10.) Non-party GlaxoSmithKline or an affiliate of that company holds the New Drug Application (NDA) for the WELLBUTRIN XL® and markets the product in the United States. (*Id.* ¶ 11.)

As required by statute, after receiving an acceptance letter from FDA in November 2004, Anchen provided Biovail and GSK notice of its ANDA. Although claiming to be concerned about the public, Biovail did not file a citizen petition raising any alleged safety concerns for over a year following notice of Anchen's ANDA, the period of time when FDA was conducting is review of the application. Instead, Biovail sued Anchen asserting two U.S. patents. Merely by filing this lawsuit, Biovail triggered a statutory stay of FDA approval of Anchen's ANDA, absent earlier court action. Biovail likely believed that this would be sufficient for delay purposes.

Biovail represents to this Court that it filed suit against Anchen and invoked a 30-month stay of final FDA approval of Anchen's ANDA only after "diligently investigating the matter." (BV Mem. at 8.) In truth, Biovail filed an "information and belief" complaint and invoked Federal Rule of Civil Procedure 11(b)(3), which permits information and belief pleadings based on the representations that allegations are "likely to have evidentiary support after a reasonable opportunity for further investigation and discovery." Fed. R. Civ. Proc. 11(b)(3).

Four months after it filed suit, after more than reasonable opportunity to do so, Biovail still had not investigated the case. At an April 25, 2005 scheduling hearing, Biovail repeatedly represented to the Court that it still needed an extended discovery period to conduct an initial investigation. (Ex. 1, 4/25/05 Tr. at 6:18-20 ("When we filed the complaint, the complaint says we need discovery to determine infringement."), 7:4-11) ("Normally, when you file a patent infringement action, you've got a sample of the accused product. You examine it. You meet with experts. . . . That is not true here."), 12:4-17 ("[T]he reasons we propose the schedule we propose is . . . We are going to need the services of an expert to find out why we think they're infringed."). The Court granted Biovail additional months to conduct the discovery it claimed was needed for an initial investigation. Once again, Biovail did nothing but delay.

After four more months passed, Judge Selna's patience with Biovail was wearing thin. Biovail had continued to delay any serious investigation, and tried to explain away its delay by stating that it was too busy with other matters to attend to this litigation. During a status hearing on August 22, 2005, the Court rejected this excuse: "THE COURT: You folks filed this case -- it's the plaintiff's duty to only commit to those cases that the plaintiff can prosecute in a reasonably prompt fashion. There is no reason this case should be treated by anyone as a step-child." (Ex. 2, 8/22/05 Tr. at 18. ) The Court set a trial date, and a December 2005 hearing date for ruling on the parties claim construction positions.

On November 14, 2005, as the claim construction hearing approached, FDA issued tentative approval of Anchen's ANDA. This decision indicated that FDA had completed and approved all of the regulatory requirements, including any bioequivalence requirements. Anchen's application would have been finally approved, but for the stay of final approval resulting from the Biovail patent lawsuit. On December 9, 2005, Judge Selna issued a tentative

ruling on claim construction in advance of the December 12, 2005 hearing. Judge Selna's tentative ruling resolved many of the claim construction issues in Anchen's favor, such that Biovail would not be able to establish its infringement case. Following these two events, Biovail filed its December 20, 2005 Citizen Petition. The next day, as reflected on in the Investor Relations pages of its website, Biovail issued a press release announcing its filing to Wall Street. (http://www.biovail.com, 12/21/2005 1:56 PM, Biovail Submits Citizen Petition to FDA.)

The District Court in the patent case made its claim construction determinations final by orders entered in January and February 2006. On March 16, 2006, shortly after fact discovery concluded, Anchen filed a Motion for Summary Judgment. Anchen's Motion was originally set to be heard on April 10, 2006. Biovail managed to obtain a continuance of the hearing date to May 22, 2006. The May 22nd date was continued after motion practice ensued over Biovail's untimely submission of four expert reports. The summary judgment hearing date was rescheduled for July 24, 2006.

On June 29, 2006, Biovail sent its letter to FDA demanding a decision on its citizen petition in advance of an final ANDA approval. Biovail unilaterally imposed a July 14, 2006 deadline on the FDA, after which "Biovail [would] consider itself free to pursue appropriate judicial relief." (BV Ex. 3.d at 1.) When that date passed without any apparent response from FDA, Biovail did not initiate suit against the Agency.

On August 1, 2006, Judge Selna issued his decision granting Anchen's Motion for Summary Judgment of Non-Infringement. Thereafter, Biovail convinced Judge Selna to delay entry of final judgment while it purportedly was contemplating whether to file a motion for reconsideration. Judge Selna ordered Biovail to make a decision by August 17, 2006. Late in the day on August 17, 2006, Biovail filed its motion, which is scheduled to be heard on August

28, 2006.  Anchen served its Opposition to the Motion to Reconsider on August 21, 2006.  On August 23, 2006, Biovail filed its action against FDA claiming a need for extraordinary relief in an "emergency" that is solely of its own making.

Since the August 1, 2006 summary judgment ruling, Biovail has also announced its plan to file an NDA in September 2006 seeking FDA approval for a new bupropion salt product.  (Ex. 3, 8/10/06 Earnings Release at 6.)  Biovail's undoubtedly hopes that if its tactics can delay of generic competition long enough, it will have time to pursue a replacement product before the WELLBUTRIN XL® is subjected to generic competition.  Such tactics are an abuse of the judicial and citizen petition processes.

## II.   BIOVAIL HAS NOT DEMONSTRATED ITS RIGHT TO ANY INJUNCTIVE RELIEF.

"Injunctive relief is an extraordinary remedy and must be sparingly granted." *Bristol-Myers,* 923 F. Supp at 215.  In order to succeed on a motion for a preliminary injunction, a movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will result in the absence of the requested relief; (3) other interested parties will not suffer substantial harm if the injunction is granted; and (4) that the public interest favors entry of a preliminary injunction.  *Id.*  Because Biovail has failed to demonstrate any of these factors, this Court should deny Biovail's motion for temporary injunctive relief.

### A.   Biovail is Not Likely To Succeed on the Merits.

The notion that Biovail is likely to succeed based on a yet unknown FDA decision concerning a bioequivalence determination runs contrary to the high level of deference courts grant FDA on this issue.  In the context of bioequivalency, courts not only give the FDA "deference", but they give the FDA a "high level of deference" because of the inherent technical

difficulties in evaluating the "sameness" of drugs.  *See Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1320 (D.C. Cir. 1998) (citing cases).

Biovail asks this Court to declare that the FDA's alleged "delay" in responding to Biovail's citizen petition is "unreasonable," and to compel the FDA to take action on  Biovail's petition.  Courts may issue such orders only in very limited circumstances. An administrative agency's failure to act is "not always" "remediable under the APA."  *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 61 (2004).  Section 706(1) of the APA authorizes courts to compel agency action only if such action is "*unlawfully* withheld" or "unreasonably delayed." 5 U.S.C. § 706(1); *Norton*, 542 U.S. at 63, 64 n.1 (emphasis added).  Thus, a claim to compel agency action under section 706(1) "can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is [legally] *required to take*."  *Norton*, 542 U.S. at 64 (2004).  "A delay cannot be unreasonable with respect to action that is not required."  *Id.* at 64 n. 1.

### 1.    The FDA Has Acted Lawfully In Evaluating Biovail's Citizen Petition.

Contrary to Biovail's assertion, the FDA has not violated any law, obligation, or "rule of reason" in evaluating Biovail's citizen petition.  FDA has acted diligently, and there is no record basis to require anything more of FDA at this time.  Biovail's argument proceeds from two false assumptions.  First, Biovail assumes that the FDA is required to issue  a final decision on its Citizen Petition within 180 days from the date it was filed.  Second, Biovail assumes that the FDA is required by law to issue a decision on Biovail's Citizen Petition before it approves Anchen's ANDA.  Neither assumption is correct.  No statute, regulation, or other source of law requires the FDA to issue a final response to a citizen petition within a specific time frame.  The only authority that Biovail cites to support its claim of a 180-day deadline is 21 C.F.R. § 10.30,

which does not support Biovail's argument.  That section requires the FDA to take one of several enumerated actions on a citizen petition within 180 days, including "provid[ing] a tentative response."  *Id.,* § 10.30(e)(2)(iii).  The regulation does *not* require the FDA to issue a *final* approval or denial within 180 days.  Biovail admits that the FDA issued a tentative response within the 180-day deadline  (*See* BV. Mem. at 9-10.)  Accordingly, the FDA satisfied the requirements of the regulation.

Nor is the FDA required to decide a pending Citizen Petition challenging an ANDA before approving the ANDA.  *See, e.g., Bristol-Myers*, 923 F. Supp. at 219 (" the court has found nothing in the [FDCA] that would require the FDA to first respond to a [Citizen] Petition before approving an ANDA"); *Novartis Pharmaceuticals Corp. v. Leavitt,* 435 F.3d 344, 347 (D.C. Cir. 2006) (upholding FDA action in case where the FDA decided a drug manufacturers citizen petition "around the time that it approved a competitor's ANDA").

Nowhere in Biovail's Complaint, Motion or Memorandum does Biovail point to *a single* statute, regulation, interpretive rule, administrative ruling, or statement by the FDA that requires the FDA to decide Biovail's petition within 180 days of receiving it or before it approves an ANDA.  None exists.  Accordingly, Biovail does not and cannot demonstrate that the FDA has "unlawfully withheld" or "unreasonably delayed" any action that it is required by law to take.  For this reason alone, Biovail's claims against the FDA must fail.

In a desperate attempt to argue that FDA has acted improperly, Biovail presents a declaration from attorney Frederick A. Stearns stating his interpretation of the timing of FDA denials of certain citizen petitions.  (BV Ex. 4.)  Apparently, Biovail and its counsel believe the applicable comparative data for evaluating its citizen petition is the set of petition denials.  Based

on the fact that 14 of the 15 selected citizen petition denials occurred the same day as an ANDA approval, Biovail argues that FDA's review process has been unlawfully delayed.

The conclusions Biovail advances from the Stearns Declaration are purely speculative. There is no basis in the record to conclude that any of the petitions was improperly denied, or that allowing for a period of judicial review would have resulted in anything other than further delay. If anything, these examples demonstrate the harm the brand-company citizen petition activity has had on ANDA applicants and consumers who overpay for drugs in absence of generic competition.

From the information of record, the more logical inference from these examples is that Biovail has amply demonstrated how brand companies currently abuse the citizen petition process in order to delay generic competition. The ANDAs at issue in these examples plainly were approvable and would have been approved earlier, but for FDA's consideration of a pending citizen petition – a citizen petition that the Agency ultimately denied. This is true, for instance, with respect to anagrelide, one of the drugs in Biovail's "study." In that case, the brand company filed a citizen petition and a stay petition shortly before the regulatory exclusivity for its product expired. That regulatory exclusivity, which was set to expire on September 14, 2004, was the only thing blocking final approval of several ANDAs. Just a month before that exclusivity expired, the brand company filed a petition purportedly raising safety concerns. FDA denied that petition on April 18, 2005 and approved several ANDAs on that same date. Despite the fact that the brand company's petition lacked any substantive merit, it nevertheless allowed the brand to maintain its stranglehold over the market a full seven months *after* its regulatory exclusivity expired. Such an abuse of the citizen petition only serves to harm the public and the

generic industry. Granting Biovail the relief it requests on this undeveloped and insufficient record would only exacerbate the harm caused by abuse of the petitioning process.

### 2. The FDA Would Not Violate Biovail's Due Process Rights If It Decided Biovail's Citizen Petition After Approving Anchen's ANDA.

Biovail erroneously asserts that it would be deprived of its property without due process of law unless the FDA decides its Citizen Petition one week before finally approving Anchen's ANDA. (See BV Mem. at 11, 12-13, 15, 19.) To establish an actionable due process claim, Biovail must show that "(1) it has a constitutionally protected . . . property interest and (2) the procedures employed deprived the plaintiff of that interest without constitutionally adequate procedure." *Beverly Enters., Inc. v. Hermen*, 130 F. Supp. 2d 1, 17 (D.D.C. 2000). Biovail can make neither showing.

### a. Biovail has no "property interest" in the timing of the FDA's decisions.

A protectable property interest in a benefit is a "legitimate claim of entitlement" to the benefit that is created and defined by existing laws or rules. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). See also *id.* (property interest must be more than a mere "abstract . . . desire" or "unilateral expectation"). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Co. v. Gonzales*, 125 S. Ct. 2796, 2803 (2005); *accord Roth v. King*, 449 F.3d 1272, 1285 (D.C. Cir. 2006).

Biovail's desire to delay ANDA approvals while the FDA evaluates its citizen petition is not a protectable "property interest." As noted above, no statute, regulation, administrative rule, or FDA practice requires the FDA to decide pending citizen petitions before approving ANDAs to which those petitions are addressed. Thus, Biovail has no legally-cognizable right or "entitlement" to that procedure. At most, Biovail has an "abstract desire" to

further delay the FDA's approval of Anchen's ANDA. Biovail's improper campaign to thwart lawful competition should not be elevated to the status of an "entitlement" worthy of constitutional protection.

Biovail also baldly asserts the FDA's practice of denying citizen petitions after approving related ANDAs "effectively denies any meaningful [judicial] review of those denials." (BV Mem. at 15.) This claim is baseless. After the FDA has issued a final decision approving an ANDA, Biovail may seek review of that decision in the courts. *See, e.g., Pfizer, Inc. v. Shalala*, 182 F.3d 975, 979 (D.C. Cir. 1999). Biovail may then "challenge the reasons underlying the FDA's final decision," including the FDA's rulings on issues raised in Biovail's citizen petition. *Id.* In short, Biovail has ample opportunity for "meaningful" review of the FDA's actions *after the FDA has issued a final decision.* The mere fact that the FDA's final decision might have certain economic consequences for Biovail does not render judicial review of that decision any less robust, effective, or "meaningful." Biovail does not and cannot explain how its right to full and fair judicial review would be impaired by the timing of the FDA's decision. To the contrary, the D.C. Circuit has recognized that a drug manufacturer can obtain "meaningful judicial review" of the FDA's approval of an ANDA after the final approval is issued. *Id.*

### b.  Biovail has already received all of the "process" that it is due.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation and internal quotations omitted). Biovail has already received such an opportunity by submitting its citizen petition to the FDA. *See generally Novartis*, 435 F.3d at 349 (rejecting drug manufacturer's claim that the FDA failed to provide it notice or opportunity to comment on

FDA decisions, and holding that manufacturer's participation in the citizen petition process afforded it "ample notice and opportunity to be heard").  The FDA issued a tentative response to the Petition within 180 days of its filing.  That is all of the "process" to which Biovail is entitled under the governing FDA regulation.  *See* 21 C.F.R. § 10.30(e)(ii)(3).  Biovail has already availed itself of the opportunity to thoroughly express its views through the citizen petition process, and the FDA is currently reviewing Biovail's petition consistent with the requirements of section 10.30.  Accordingly, Biovail cannot complain that it has somehow been given inadequate notice or "process."  It "has already received every benefit that it could from a favorable judgment on this issue."  *Novartis*, 435 F.3d at 349.

Biovail's complaints fail for another, equally compelling reason:  Biovail never petitioned the FDA to stay its consideration or final approval of Anchen's ANDA.  FDA regulations provide that "[t]he Commissioner may at any time stay or extend the effective date of an action pending or following a decision on any matter."  21 C.F.R. § 10.35.  Interested parties may apply for a stay in the manner specified in that section.  The Commissioner "shall promptly review a petition for stay of action," and " may grant a stay in any proceeding if it is in the public interest and in the interest of justice."  *Id.*  The regulations provide that FDA should grant a stay request "if all of the following apply:

    (1)  The petitioner will otherwise suffer irreparable injury.

    (2)  The petitioner's case is not frivolous and is being pursued in good faith.

    (3)  The petitioner has demonstrated sound public policy grounds supporting the stay.

    (4)  The delay resulting from the stay is not outweighed by public health or other public interests."

*Id.*

Biovail never invoked this procedure, and therefore never undertook to meet the necessary burden. Biovail now asks this court to create a new procedural remedy out of whole cloth rather than require a company like Biovail to avail itself of the existing process. If Biovail's professed concerns for the public welfare were sincere, it would have sought to stay the FDA's consideration of Anchen's ANDA as quickly as possible. Instead, it chose to maximize delay by seeking to halt the FDA's approval process process *years after* the FDA began considering Anchen's ANDA and immediately before the FDA's final approval of that ANDA. Moreover, Biovail now seeks the extraordinary remedy of emergency injunctive relief. Biovail has received the process it was due given the choices it has made. To the extent that there is any "emergency" here, it is entirely of Biovail's own making.

### 3. The Court's Analysis In TRAC v. FCC Does Not Support Biovail's Position and Should Not Be Applied in This Case.

Biovail half-heartedly argues that its Complaint "is likely to succeed under this Circuit's guidelines in *Telecommunications Research & Action Ctr.* v. *FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") and its progeny." (BV. Mem. at 15; *see also id.* at 16-17.) *TRAC* provides no support for Biovail's argument. In *TRAC*, the court *declined* to grant mandamus against the FCC to compel a final agency action even though the FCC had delayed acting for "almost five years." *Id.* at 80-81. Moreover, unlike the FCC in *TRAC*, the FDA has not "fail[ed] to meet [any] self-declared deadlines" within which to act. *Id.* at 80. Nor has Congress or the FDA "provided a timetable or other instruction of the speed with which it expects the [FDA] to proceed" in deciding citizen petitions. *Id.* at 80. Further, as explained throughout this brief, Biovail's alleged harm in this case is wholly speculative and unsubstantiated, and the public interest would not be served by granting Biovail's motion.

Regardless, it is highly improper for Biovail to even ask this Court to apply the *TRAC* analysis here. The FDA has promulgated detailed regulations outlining procedures governing applications to stay FDA proceedings and setting explicit standards for determining when such applications should be granted. See 21 C.F.R. § 10.35. The FDA promulgated these procedures and standards after conducting a rigorous, formal notice and comment procedure. Instead of following these mandatory procedures, Biovail asks this court to circumvent the FDA's carefully-considered rules and apply wholly different standards which have not resulted from notice and comment procedures. This court should decline Biovail's invitation to second-guess the FDA simply because Biovail chose not to pursue available avenues of relief before the FDA.

> **B.      Biovail's Purported "Irreparable Harm" Is Self-Inflicted, Completely Speculative And Unrelated To Any Interest In Having Its Citizen Petition Addressed By The FDA.**

Biovail argues that it will sustain irreparable harm if injunctive relief is not granted because: (1) it "has a significant property interest in Wellbutrin XL" and will suffer an economic injury (BV Mem. at 17), and (2) the reputation of WELLBUTRIN XL$^{®}$ might be harmed if generic versions create a higher risk of seizures (*id.* at 19). Biovail essentially posits that FDA approval of generic versions of WELLBUTRIN XL$^{®}$ should be enjoined until it has had a chance to seek court review of any denial of its citizen petition. Biovail's arguments have no merit and all of them were rejected by this Court in *Bristol-Myers*.

Biovail's claim that it will suffer an economic injury if the FDA approves generic versions of WELLBUTRIN XL$^{®}$ does not constitute irreparable harm. As this Court stated in *Bristol-Myers*, irreparable injury is a "very high standard." 923 F. Supp. at 220. Injuries are not "irreparable" unless they are "certain," "great," and imminen[t]." *Sociedad Anomia Vina Santa*

*Rita v. Dep't of Treasury*, 193 F. Supp. 2d 6, 14 (D.D.C. 2001).  "[F]inancial harm alone cannot constitute irreparable injury unless it threatens the very existence of the movant's business."  *Id.* The conclusory and speculative single paragraph in the declaration of Charles Rowland, submitted by Biovail with its motion, does not even come close to laying out any case of irreparable harm as this Court has previously described it.  (BV Mem. at Ex. 4, ¶ 6).  While Biovail here relies on reports by analysts about the harm that may be caused by generic entry, Biovail's CEO, Douglas Squires, was quoted as stating on August 10, 2006, that the entry of a generic version of WELLBUTRIN XL® "is not a mortal or life-threatening situation for us" and that it has $571 million in cash on hand.  (Ex. 4, B. Erman, "Biovail shifts gears to thwart generics"  The Ottawa Citizen (August 11, 2006).)[1]  Squires described the plans to replace any lost revenue, and to use cash on hand to accelerate other opportunities.  (*Id.*)  Biovail's CEO admits that the economic consequences of generic approval are insufficiently severe to constitute irreparable injury under the standard described by this Court in *Bristol-Myers*.  *See also Mylan Pharms., Inc. v. Shalala*, 81 F. Supp. 2d 30, 42 (D.D.C. 2000) ("potential loss in revenue does not amount to irreparable harm under the standards set forth in this Circuit."); *Sandoz, Inc. v. FDA*, No. 06-1134 (RCL), 2006 WL 1897728, at *3 (D.D.C. July 12, 2006) (same).

There is also an insufficient link between Biovail's alleged irreparable financial injury, and the safety issues raised in its Citizen Petition.  Even if the FDA resolves the alleged safety issues raised in Biovail's Citizen Petition to Biovail's satisfaction, it will eventually face financial loss from generic competition.  Every competitor faces an economic loss upon the entry additional competitive products.  Such a loss cannot be the "irreparable injury" absent a sufficient to the substance of the underlying agency decision.

---

[1]      A replay of the analyst call that is reported in the article can be accessed via Biovail's website or at the following link: (http://www.corporate-ir.net/ireye/ir_site.zhtml?ticker=BVF&script=1010&item_id=1365187.)

In an effort to suggest a link, Biovail speculates that it will suffer an injury to the reputation of the brand product if unsafe generics hit the market. The Court should not accept this unsupported argument where, as here, "there is nothing before the court which would lead it to conclude that [generic bupropion hydrochloride extended release tablets] will cause any harmful health effects." *Bristol-Myers,* 923 F. Supp. at 221. A search the Electronic Orange Book available at FDA's website indicates that approximately thirty (30) bupropion hydrochloride tablet products have been approved by FDA over the years. (Ex. 5.) Biovail does not question FDA's competency in having reviewed these prior product, and there is no record basis to conclude that FDA will fail to conduct a proper review of all issues with the pending generic applications, or that Anchen's ANDA product will have a safety profile different than WELLBUTRIN XL.

Indeed, it should be noted that the WELLBUTRIN XL® prescribing information submitted by Biovail itself contains a warning that "Bupropion is associated with a dose-related risk of seizures." (BV Ex. 3.B, Prescribing Information at p. 8, (ECF Docket Page 18 of 101).) This warning is made as to bupropion generally because, as the same document reveals, the "seizure incidence with WELLBUTRIN XL" was "not formally evaluated in clinical trials." *Id.* Given the record, as in *Bristol-Myers,* "if the injunction is granted, [Biovail] would substantially receive the ultimate relief it requests, before there has been a trial of the issues and on a record which fails to show [Biovail's] substantial likelihood of succeeding on the merits." *Bristol-Myers*, 923 F. Supp. at 221.

Finally, to the extent any financial harm to Biovail is "irreparable" it is Biovail's own fault. Biovail delayed in filing its Citizen Petition creating the alleged calamity of which it now complains. Biovail knew there were pending Wellbutrin XL ANDAs for more than a year

before it filed its citizen petition.  The timing of the citizen petition (a few weeks after Anchen received tentative approval) and the initiation of this  action (a few weeks after it lost its infringement case on summary judgment) manifests Biovail's attempted "manipulation of the judicial process."  *See Mylan*, 81 F. Supp. 2d at 44 ("delay … militates against a finding of irreparable harm); *Sandoz*, 2006 WL 1897728, at *3 (same).

C.    **The Harm Caused To Others Greatly Outweighs Any Biovail's Interest In Improperly Protecting Its Illicit Monopoly.**

Any injury to Biovail "must be weighed against … the extent to which an injunction will substantially injure [another] party[.]" *Mylan*, 81 F. Supp. 2d at 44.  Biovail sued Anchen in November 2004.  Although Anchen obtained tentative approval in November 2005, the existence of Biovail's patent case prevented final approval.  Now that Anchen has cleared this additional legal hurdle, it has an unqualified statutory right to FDA approval now that the district court has issued a decision finding that Anchen's ANDA products do not infringe.  21 U.S.C. §355(j)(5)(B)(iii)(I); *see also Mylan*, 81 F. Supp. 2d at 32-33.

While the FDA has substantial discretion to administer its various responsibilities, *Biovail* has no basis to insist that the FDA address its petition before the FDA addresses Anchen's ANDA approval.  Biovail should not be allowed to use this proceeding to enlarge the stay provided by statute and further delay approval of Anchen's ANDA.

D.    **The Public Interest Would Be Harmed If Injunctive Relief Is Allowed.**

There can be no doubt that the public would be the party irreparably harmed if injunctive relief is allowed.  Every day that Biovail delays FDA approval of qualified generic competitors costs that public millions of dollars that cannot be easily recompensed.  *See Bristol-Myers*, 923 F. Supp. at 221-22; *Sandoz*, 2006 WL 1897728, at *5.  Moreover, if Biovail is successful in utilizing this tactic to delay generic competition (even for a day), it is a certain bet

that the FDA will be flooded with additional citizen petitions filed simply for the purpose of complicating and delaying generic competition across the board.  Such delays run contrary to the entire purpose of the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act because, as the D.C. Circuit has recognized, Congress' goal in enacting that critical legislation was "to get generic drugs into the hands of patients at reasonable prices--fast."  *In re Barr Labs.*, 930 F.2d 72, 76 (D.C. Cir. 1991)

## CONCLUSION

For the foregoing reasons, Biovail's motion is completely lacking in any legal basis, and devoid of the facts and equity necessary to obtain injunctive relief.  The Court should summarily deny the request on the papers.

Dated:   August 24, 2006                ANCHEN PHARMACEUTICALS, INC.


By:    _____/s/_____
                Gordon A. Coffee (D.C. Bar No. 385613)
                WINSTON & STRAWN LLP
                1700 K Street NW
                Washington D.C. 20006
                (202) 282-5000
                (202) 282-5100

                *Of Counsel*:
                John E. Mooney
                Donald J. Mizerk
                WINSTON & STRAWN LLP
                35 West Wacker Drive
                Chicago, Illinois 60601
                (312) 558-5600

                Attorneys for Anchen Pharmaceuticals, Inc.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing document was served on this 24th day of August, 2006 via ECF, with courtesy copies via electronic mail on:

James F. Segroves
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, D.C. 20004-2533
jsegroves@proskauer.com

Ronald S. Rauchberg
Kevin J. Perra
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036
rrauchberg@proskauer.com
kperra@proskauer.com

John B. Dubeck
KELLER AND HECKMAN LLP
1001 G Street, NW
Washington, D.C. 20001
dubeck@khlaw.com

Gerald Cooper Kell
U.S. DEPARTMENT OF JUSTICE
1331 Pennsylvania Avenue, NW
Suite 950 N
Washington, D.C. 20004
gerald.kell@usdoj.gov

Shoshana Hutchinson
U.S. FOOD AND DRUG ADMINISTRATION
Office of the General Counsel
5600 Fishers lane GCF-1
Rockvill, MD 20857
shoshana.hutchinson@fda.hhs.gov

By: _____/s/_____
Gordon A. Coffee