## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BIOVAIL CORP., *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 06-01487 (RMU) |
| ) | |
| U.S. FOOD & DRUG ) | |
| ADMINISTRATION, *et. al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR
## A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### INTRODUCTION

Plaintiffs Biovail Corporation and Biovail Laboratories International SRL ("Biovail")
brought this motion seeking a court order prohibiting the Food and Drug Administration ("FDA")
from approving any abbreviated new drug application ("ANDA") for the generic version of
Wellbutrin XL (bupropion hydrochloride (HCl) extended-release tablets), unless FDA responds
to Biovail's citizen petition at least one week prior to any such approval.[1]  *See* Compl. ¶ 3.
Biovail has failed to demonstrate any current harm that would be redressed by emergency relief,
and its claim that FDA is somehow required to respond to its citizen petition before approving
any ANDAs for generic Wellbutrin XL is groundless.

Biovail submitted a citizen petition to FDA on December 20, 2005, requesting that FDA
require any applicant for an ANDA for a generic version of Wellbutrin XL to meet certain

---

[1]      In its minute order of August 23, 2006, the court instructed defendants to inform all
interested parties, including entities with pending abbreviated new drug applications, of the
pendency of this action and plaintiffs' motion.  Defendants have done so.

bioequivalence criteria, specified in the petition.  *See* Ex. 3.B, Pls. Mot. for TRO and PI, at 1.  By letter dated June 7, 2006, FDA explained that it had not yet reached a decision on Biovail's citizen petition because the petition "raises complex issues requiring extensive review and analysis by Agency officials," and that FDA would respond to the petition as soon as a decision was reached.  *See* Ex. 3.C, Pls. Mot. for TRO and PI, at 1.  On June 29, 2006, Biovail responded to FDA's June 7 letter, demanding that FDA take immediate action on the citizen petition, and respond to the petition at least two business days prior to finally approving any ANDA for generic Wellbutrin XL.  *See* Ex. 3.D, Pls. Mot. for TRO and PI, at 1.

Biovail now maintains that it will be irreparably harmed if FDA were to approve any ANDA for generic Wellbutrin XL without responding, presumably favorably, to its citizen petition *prior* to any approval of a competitive product.  Biovail's contention that the absence of a response to its citizen petition will cause consumers to be harmed from unsafe generic Wellbutrin XL and will cause physicians to cease prescribing Wellbutrin XL to patients is unfounded and wildly speculative.  FDA only approves drugs products if and when the statutory and regulatory requirements for safety and effectiveness have been satisfied.  There is nothing in those requirements requiring a response to a citizen petition prior to approval, and Biovail has not demonstrated any authority, nor can it, to support its claim of entitlement to a petition response prior to ANDA approval.  In sum, Biovail has no likelihood of succeeding on the merits of this case, and, as a result, its motion for a temporary restraining order and preliminary injunction should be denied.

### STATUTORY AND REGULATORY FRAMEWORK

I.    New Drug Applications

Under the Federal Food, Drug, and Cosmetic Act ("FDCA"), pharmaceutical companies

seeking to market the initial version of a drug (also known as the "innovator" or "pioneer" drug)

must first obtain FDA approval by filing a new drug application ("NDA") containing extensive

scientific data demonstrating the safety and effectiveness of the drug.  21 U.S.C. § 355(a), (b).

An NDA applicant must also submit information on any patent that claims the drug, or a method

of using the drug, and for which a claim of patent infringement could reasonably be asserted

against an unauthorized party.  21 U.S.C. § 355(b)(1), (c)(2).  FDA must publish the patent

information it receives, and does so, in "Approved Drug Products with Therapeutic Equivalence

Evaluations" (the "Orange Book").  *Id.*; *see also* 21 C.F.R. § 314.53(e).

II.    Abbreviated New Drug Applications

The Drug Price Competition and Patent Term Restoration Act of 1984 (known as the

"Hatch-Waxman Amendments"), codified at 21 U.S.C. §§ 355 and 35 U.S.C. §§ 156, 271, and

282, permits the submission of ANDAs for approval of generic versions of approved drug

products.  21 U.S.C. § 355(j).  ANDA applicants do not have to submit clinical data to

demonstrate the safety and efficacy of the product, as in an NDA.  Rather, an ANDA relies on

FDA's previous findings that the product approved under the NDA is safe and effective.

Specifically, under 21 U.S.C. § 355(j), the agency approves duplicates of listed drugs on the basis

of chemistry, manufacturing, and bioequivalence data without evidence from literature or clinical

data to establish effectiveness and safety.  Under these provisions, if an ANDA applicant

establishes that its proposed drug product has the same active ingredient, strength, dosage form,

3

route of administration, labeling, and conditions of use as a listed drug, and that it is bioequivalent[2] to that drug, the applicant can rely on the fact that the FDA has previously found the listed drug to be safe and effective.

The scientific premise underlying the Hatch-Waxman Amendments is that drug products that are bioequivalent and pharmaceutically equivalent[3] to each other are therapeutically equivalent, meaning that the drugs generally may be substituted for each other.  Based on these statutory and regulatory requirements, FDA classifies as therapeutically equivalent those products that:

(1) are approved as safe and effective;

(2) are pharmaceutical equivalents in that they (a) contain identical amounts of the same active drug ingredient in the same dosage form and route of administration, and (b) meet compendial or other applicable standards of strength, quality, purity, and identity;

(3) are bioequivalent in that (a) they do not present a known or potential bioequivalence problem and they meet an acceptable in vitro standard, or (b) if they do present such a known or potential problem, they are shown to meet an appropriate bioequivalence standard;

are adequately labeled; and

---

[2]  Two drugs are considered bioequivalent if, in general, the rate and extent of absorption of the generic drug do not show a significant difference from the rate and extent of absorption of the listed drug.  21 U.S.C. § 355(j)(8)(B).

[3]  Pharmaceutically equivalent drug products have identical dosage forms and contain identical amounts of the identical active ingredient or ingredients, and meet the identical compendial or other applicable standard of identity, strength, quality, and purity.  They do not necessarily contain the same inactive ingredients and may also differ in characteristics such as shape, scoring, release mechanism, and, within certain limits, labeling (*see* 21 C.F.R. § 320.1 and the Orange Book, Introduction at p. vii).

(4) are manufactured in compliance with current good manufacturing practice.[4]

FDA's regulations contained at 21 C.F.R. Part 320 establish acceptable methodologies for determining the bioequivalence of drug products. The courts have expressly upheld FDA's regulatory implementation of the Act's bioequivalence requirements. *See*, *e.g.*, *Schering Corp. v. FDA*, 51 F.3d 390 at 397-400 (3d Cir. 1995); *Fisons Corp. v. Shalala*, 860 F. Supp. 859 (D.D.C. 1994).

The Hatch-Waxman Amendments were intended to balance encouraging innovation in drug development with accelerating the availability of lower cost alternatives to innovator drugs. *See* H.R. Rep. No. 98-857 (Part I), 98th Cong., 2d Sess. at 14-15 (1984), *reprinted in* 1984 U.S.C.C.A.N. 2647-48; *see also, e.g., Tri-Bio Labs., Inc. v. United States*, 836 F.2d 135, 139 (3d Cir. 1987). The timing of approval of ANDAs depends, in part, on patent protections for the pioneer drug.

## ARGUMENT

To obtain either a temporary restraining order ("TRO") or a preliminary injunction, a party must demonstrate that: (1) it has a substantial likelihood of success on the merits; (2) it will suffer irreparable injury in the absence of preliminary relief; (3) other interested parties will not be substantially injured if the requested relief is granted; and (4) granting such relief would serve the public interest. *See Boehringer Ingelheim Corp. v. Shalala,* 993 F. Supp. 1, 1-2 (D.D.C. 1997); *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d at 1066. The Court must balance the four factors in deciding whether to grant the injunctive relief. *Id.*

The injunctive relief Biovail seeks in this case is "an extraordinary form of judicial relief"

---

[4] The Orange Book, Introduction at p. vi.

5

and is not to be granted lightly.  *Mylan v. Thompson*, 139 F. Supp. 2d 1, 17 (D.D.C.) ("*Mylan*

*(buspirone)*"), *rev'd other grounds*, 268 F.3d 1323 (Fed. Cir. 2001); *Bristol-Myers Squibb Co. v.*

*Shalala*, 923 F. Supp. 212, 215 (D.D.C. 1996).

I.     Biovail Is Not Likely To Succeed On The Merits

Biovail contends that FDA's failure to either approve or deny its citizen petition to date

constitutes agency action that is unlawfully withheld or unreasonably delayed, in violation of the

Administrative Procedure Act.  Pls. Mem. at 158.  Biovail discusses the factors outlined in

*Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)

("*TRAC*") for a court to consider when evaluating a claim of unreasonable delay, but

consideration of the *TRAC* factors is not necessary or appropriate here because FDA has

complied with its regulations regarding citizen petitions.

Under 21 C.F.R. § 10.30(e), FDA is required to respond to petitions within 180 days of

receipt.  The response will either approve the petition, deny the petition, or provide a tentative

response.  21 C.F.R. § 10.30(e)(2).  A tentative response must indicate "why the agency has been

unable to reach a decision on the petition," and "*may* specify when a final response may be

furnished." *Id.* (emphasis added).  FDA fully complied with 21 C.F.R. § 10.30(e)(2) with regard

to Biovail's citizen petition.  FDA provided Biovail with a tentative response on June 7, 2006,

within 180 days of FDA's receipt of the petition, explaining why FDA had been unable to reach a

decision to date (i.e., because Biovail's petition "raises complex issues requiring extensive review

and analysis by Agency officials").  Contrary to Biovail's assertions, FDA is not *required* to

provide a petitioner with a time frame within which the agency will respond to the petition.

Because FDA satisfied the requirements imposed by regulation for responding to citizen

petitions, FDA has not unreasonably delayed or unlawfully withheld action on Biovail's petition.

Biovail's argument that it will be "deprived of its property interests without the due process of judicial review" if FDA does not respond to its citizen petition prior to approving any ANDAs for generic Wellbutrin XL, Pls. Mem. at 15, similarly lacks merit. Since passage of the Hatch-Waxman amendments, any applicant submitting an NDA knows that its product may be subject to generic competition upon approval of an ANDA. *See* 21 U.S.C. §§ 355(j)(7)(I); 355(j)(2)(A)(I). NDA-holders were afforded certain patent and exclusivity protections under Hatch-Waxman, including the 30-month stay which Biovail itself took advantage of prior to losing its patent litigation. *See* Pls. Mem. at 10. Biovail cannot now say that it lacks notice of FDA potentially approving a generic version of its product. Furthermore, Biovail does not have a "protected property interest" in Wellbutrin XL that extends to the exclusion of generic versions of that product from the market; the FDCA, 21 U.S.C. § 355(j), specifically permits FDA to approve ANDAs for generic drug products. The Hatch-Waxman Amendments did not grant NDA sponsors the right to be free of generic competition once applicable patents or exclusivity protections have expired. The policies behind Hatch-Waxman dictate that Biovail not be permitted to shield its market share when FDA has reasonably determined that competing generic drug products may be approved under the Act.

Finally, Biovail has not provided any support for its claim that it is entitled to a response to its citizen petition prior to approval of any ANDAs for generic Wellbutrin XL so that it can seek judicial review of FDA's response. Congress delegated FDA the authority to determine the safety and effectiveness of drugs products prior to marketing, and, as discussed above, there are numerous statutory and regulatory requirements that applicants – of both NDAs and ANDAs –

7

must satisfy prior to approval. None of the statutory or regulatory requirements mandate that FDA respond to a competitor's citizen petition before approving a product, nor is FDA limited to any particular means of scientific evaluation. Yet, Biovail seeks to require FDA to not only employ "specific criteria," Pls. Mem. at 2, in evaluating the approvability of ANDAs for the generic version of its drug, Wellbutrin XL, but also to inform Biovail of the outcome of the agency's evaluation of the ANDAs at least one week prior to approval. There is no constitutional, statutory, or regulatory requirement mandating FDA to tailor its review of a competing product to suit Biovail's wants or needs. Indeed, under the statute, the agency must approve an application unless certain findings set out in the FDCA are identified, 21 U.S.C. § 355(j)(4), and FDA's performance of its official duties are entitled to a presumption of regularity. *See*, *e.g.*, *Leboeuf, Lamb, Greene, & Macrae, L.L.P. v. Abraham*, 347 F.3d 315, 320 (D.C. Cir. 2003). Moreover, were Biovail's view of the world adopted, innovator companies would be further encouraged to submit frivolous citizen petitions challenging ANDA approvals to delay competition.

In sum, Biovail's arguments on its likelihood of success are unpersuasive and fall far short of justifying a TRO or preliminary injunction. Biovail's attempt to interject itself into the review of competitors products is not within the confines of the statutory criteria for approval of an ANDA and should be soundly rejected.

II.    Biovail Has Not Shown That It Will Suffer Irreparable Harm Without Injunctive Relief

Biovail has failed to demonstrate that it will suffer irreparable harm absent preliminary injunctive relief. Courts insist that only *irreparable* harm justifies the issuance of a preliminary injunction. Indeed, "[t]he *sine qua non* of granting any preliminary injunctive relief is a clear and

8

convincing showing of irreparable injury to the plaintiff." *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003). Because Biovail is not likely to succeed on the merits, Biovail "would have to make a very substantial showing of severe irreparable injury" to prevail on its motion. *Nat'l Pharm. Alliance v. Henney,* 47 F. Supp. 2d 37, 41 (D.D.C. 1999); *see also Apotex, Inc. v. FDA*, 2006 U.S. Dist. LEXIS 20894 *54 (D.D.C. Apr. 19, 2006). "Irreparabilty of injury is a very high standard." *See Bristol-Myers,* 923 F. Supp at 220. The injury alleged must be certain, great, actual, and imminent, *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), and it must be "more than simply irretrievable; it must also be serious in terms of its effect on the plaintiff." *Mylan (buspirone)*, 139 F. Supp. 2d at 27 (quoting *Gulf Oil Corp. v. Dept. of Energy*, 514 F. Supp. 1019, 1026 (D.D.C. 1981)).

It is well settled that mere economic loss in and of itself does not constitute irreparable harm. *Wisconsin Gas*, 758 F.2d at 674; *Apotex, Inc. v. FDA*, 2006 U.S. Dist. LEXIS 20894 *53; *Mylan Pharm., Inc. v. Shalala*, 81 F. Supp. 2d 30, 42 (D.D.C. 2000) ("*Mylan (terazosin)*"); *Bristol-Myers*, 923 F. Supp. at 220. "Mere injuries, however substantial, in terms of money, time and energy necessarily expended" are inadequate. *Wisconsin Gas*, 758 F.2d at 674 (quoting *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)). Even irrecoverable economic loss does not rise to the level of irreparable harm unless the financial injury is "serious in terms of its effect on the plaintiff." *Gulf Oil*, 514 F. Supp. at 1026; *see also Apotex, Inc. v. FDA*, 2006 U.S. Dist. LEXIS 20894 *54; *Experience Works, Inc.*, 267 F. Supp. 2d at 96 ($21.1 million reduction in funding is serious financial blow, but one frequently faced by other similar entities, and not an economic loss that threatens survival of the business); *Sociedad Anonima Viña Santa Rita v. Dep't of Treasury*, 193 F. Supp. 2d 6, 14 (D.D.C. 2001) ("financial

harm alone cannot constitute irreparable injury unless it threatens the very existence of the movant's business"); *Mylan (terazosin)*, 81 F. Supp. 2d at 42-43.

Biovail's arguments about the various harms that it will suffer presume that FDA will not comply with the statutory and regulatory requirements when approving ANDAs for generic Wellbutrin XL.  Biovail contends that unless FDA uses the criteria contained in its citizen petition for determining the approvability for ANDAs for generic Wellbutrin XL, the public will be endangered by an unsafe generic drug product and therefore physicians will cease prescribing all Wellbutrin XL, whether generic or brand name, thereby causing Biovail to lose money.  Pls. Mem. at 17-18.  This is pure speculation by Biovail, however, because FDA does not approve products for marketing until those products have satisfied the applicable statutory and regulatory requirements.  If an ANDA referencing Wellbutrin XL were to be approved and Biovail believes the approval to be improper, it can then challenge that approval in court.[5]

In any event, Biovail's claimed financial loss, as well as its claim of intangible losses, are speculative and are merely forms of economic loss that do not meet the high standards set forth above.  Allegations of lost sales are a far cry from the required demonstration of a "serious" and "irretrievable" loss that "would significantly damage its business above and beyond a simple diminution in profits."  *Mylan (buspirone)*, 139 F. Supp. 2d at 27 (also noting that the "D.C. Circuit is hesitant to award injunctive relief based purely on loss opportunities and market share."); *Mylan (terazosin)*, 81 F. Supp. 2d at 42.  Biovail, thus, has not demonstrated any

---

[5] While Biovail contends that requiring it to wait until an ANDA is approved to challenge that approval is a "difficult and unfair burden," Pls. Mem. at 19, the requirement that a litigant be suffering an actual, current harm is a well-established, jurisdictional requirment.  *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Branton v. FCC*, 993 F.2d 906, 908-09 (D.C. Cir. 1993).

irreparable injury sufficient to justify entry of the emergency relief it seeks.

III.    The Requested Relief Will Not Serve The Public Interest

Biovail has also failed to show that any potential harm to its interests in the absence of injunctive relief outweighs the potential harm to other parties, or that the entry of such relief would further the public interest – the third and fourth requirements for preliminary injunctive relief.  While Biovail asserts that the economic losses it would suffer if it had to wait until after an ANDA was approved before challenging that approval, which would only take a day or two in the context of a TRO, would be irreparable, it argues that the harm to any ANDA applicant in having its approval delayed by even just a week are minimal.  Pls. Mem. at 20.  However, while the harm suffered by Biovail is purely speculative, the harm suffered by ANDA applicants with delayed approvals could be substantial.

More importantly, Biovail cannot show that the public interest would be served by delaying approval for generic Wellbutrin XL.  Such a stay would cause consumers to suffer because Biovail's monopoly and the accompanying price structure for its innovator drug would continue.  *See Boehringer*, 993 F. Supp. at 3 ("there is the public interest in receiving generic competition to brand-name drugs as soon as is possible").  *See also Apotex, Inc. v. FDA*, 2006 U.S. Dist. LEXIS 20894 *60 (public interest is not served by injunction that "would effectively constitute a constructive extension of the brand manufacturer's patent . . . .").  As explained above, Biovail's contention that the failure to grant injunctive relief will put the public health at risk lacks merit.  Biovail also argues that a preliminary injunction serves the public interest by preserving Biovail's right to due process.  But once again, because Biovail has failed to establish

11

that it has any due process rights at issue that are being threatened, public interest "would be better served by denying [Biovail's] motion." *Boehringer*, 993 F. Supp. at 3.

## CONCLUSION

For the foregoing reasons, Biovail's motion for a temporary restraining order and preliminary injunction should be denied.

Of Counsel:                                   Respectfully submitted,

PAULA M. STANNARD                             PETER D. KEISLER
Acting General Counsel                        Assistant Attorney General

SHELDON T. BRADSHAW                           EUGENE M. THIROLF
Associate General Counsel                     Director
Food and Drug Division

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation              /s/ Gerald C. Kell
                                              GERALD C. KELL
SHOSHANA HUTCHINSON                           Senior Trial Counsel
Assistant Chief Counsel, Litigation           Office of Consumer Litigation
U.S. Dept. of Health & Human Services         U.S. Department of Justice
Office of the General Counsel                 P.O. Box 386
5600 Fishers Lane                             Washington, D.C. 20044
Rockville, MD  20857                          Tel:  202-307-0044
301-827-8579                                  Fax:  202-514-1586

August 24, 2006