**Exhibit 1**

Anchen's Opposition to Motion for a Temporary Restraining Order and Preliminary Injunction

CERTIFIED COPY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

---

HONORABLE JAMES V. SELNA, DISTRICT JUDGE PRESIDING

---

BIOVAIL LABORATORIES INC., ET AL.,

    PLAINTIFFS,

    VS.

ANCHEN PHARMACEUTICALS INC., ET AL.,

    DEFENDANTS.

CASE NO. SA CV 04-1468-JVS

REPORTER'S TRANSCRIPT OF PROCEEDINGS
MOTIONS CALENDAR

LOS ANGELES, CALIFORNIA
MONDAY, APRIL 25, 2005

MARGARET J. BABYKIN
COURT REPORTER
429J - U. S. DISTRICT COURTHOUSE
312 NORTH SPRING STREET
LOS ANGELES, CALIFORNIA  90012

```
                                                            2

 1   APPEARANCES:

 2   ON BEHALF OF THE PLAINTIFF:

 3          KATTEN MUCHIN ZAVIS ROSENMAN
            BY:  ERIC COHEN
 4               CHARLES M. STERN
                 ATTORNEYS AT LAW
 5          2029 CENTURY PARK EAST
            SUITE 2600
 6          LOS ANGELES, CALIFORNIA  90067

 7


 8   ON BEHALF OF THE DEFENDANT:

 9          WINSTON & STRAWN LLP
            BY:  JOHN E. MOONEY
10               ATTORNEY AT LAW
            35 WEST WACKER DRIVE
11          CHICAGO, ILLINOIS  60601

12
            WINSTON & STRAWN LLP
13          BY:  STACEY N. KNOX
                 ATTORNEY AT LAW
14          38TH FLOOR
            333 SOUTH GRAND AVENUE
15          LOS ANGELES, CALIFORNIA  90071

16

17

18

19

20

21

22

23

24

25
```

```
                                                                    3

1                          I N D E X

2   SA CV 04-1468-JVS                           APRIL 25, 2005

3   PROCEEDINGS:    SCHEDULING CONFERENCE
```

```
                                                                    4

 1         SANTA ANA, CALIFORNIA; MONDAY, APRIL 25, 2005; 11:28 A.M.

 2              THE CLERK:  ALL RISE.

 3              THIS UNITED STATES DISTRICT COURT FOR THE CENTRAL

 4    DISTRICT OF CALIFORNIA IS AGAIN IN SESSION.

 5              PLEASE BE SEATED AND COME TO ORDER.

 6              ITEM 10, SANTA ANA CIVIL 04-1468-JVS, BIOVAIL

 7    LABORATORIES INCORPORATED ET AL. VERSUS ANCHEN

 8    PHARMACEUTICALS INCORPORATED, ET AL.

 9              COUNSEL, PLEASE STATE YOUR APPEARANCES.

10              MR. COHEN:  ERIC COHEN AND CHARLES STERN FOR

11    PLAINTIFF BIOVAIL LABORATORIES INC.

12              MR. MOONEY:  JOHN MOONEY AND STACEY KNOX FOR ANCHEN

13    PHARMACEUTICALS, INC.

14              THE COURT:  GOOD MORNING.

15              THANK YOU FOR YOUR REPORT.

16              YOU'VE GOT SOMEWHAT WIDELY DIVERGENT IDEAS AS TO

17    WHEN THIS CASE OUGHT TO GO TO TRIAL.  WHY DON'T YOU EACH

18    EXPLAIN TO ME YOUR THINKING.

19              MR. COHEN:  THANK YOU, YOUR HONOR.

20              FIRST, I THINK WE SHOULD TAKE CARE OF A PIECE OF

21    HOUSEKEEPING.  THERE WERE INITIALLY TWO PLAINTIFFS IN THIS

22    ACTION, BIOVAIL LABORATORIES, INC. AND SMITHKLINE BEECHAM.

23    SMITHKLINE HAS FILED A MOTION TO WITHDRAW AND EXECUTED -- AND

24    THE PARTIES HAVE EXECUTED A STIPULATION THAT SMITHKLINE

25    WITHDRAW.  I'VE GOT A STIPULATION THAT MR. MOONEY AND I HAVE
```

```
                                                          5
 1   SIGNED.  IT'S NOT SIGNED BY COUNSEL FOR SMITHKLINE, BUT I
 2   BELIEVE ANOTHER ONE WAS FILED --
 3           MR. MOONEY:  I THINK BY THEIR MOTION THEY CERTAINLY
 4   CONSENTED TO THEIR DESIRE TO BE OUT.
 5           THE COURT:  YOU WANT TO HAND THAT UP, PLEASE.
 6           MR. MOONEY:  YES.
 7           (PAUSE IN PROCEEDINGS.)
 8           THE COURT:  OKAY.
 9           (THE COURT AND CLERK CONFERRING.)
10           THE COURT:  I'LL DIRECT THAT THE STIPULATION BE
11   FILED.  AND I PUT A "SO ORDERED" ON IT.
12           MR. COHEN:  THANK YOU, YOUR HONOR.
13           YOUR HONOR, THIS IS A PATENT INFRINGEMENT CASE.
14           THE COURT:  RIGHT.
15           MR. COHEN:  BUT IT'S A LITTLE BIT DIFFERENT KIND OF
16   PATENT INFRINGEMENT CASE.  AND I'D LIKE TO TAKE A FEW MINUTES
17   TO EXPLAIN -- EXPLAIN FIRST WHAT TYPE OF ACTION THIS IS AND
18   WHY WE THINK WE NEED MORE TIME THAN THE DEFENDANTS THINK FOR
19   THIS CASE.
20           THIS IS AN ACTION BROUGHT UNDER A SPECIAL PROVISION
21   OF THE PATENT ACT THAT WAS PART OF THE HATCH-WAXMAN -- THE
22   SO-CALLED "HATCH WAXMAN ACT" WHICH DEALS WITH THE, IN
23   GENERAL, WITH THE APPLICATIONS TO THE FDA TO -- FOR
24   PERMISSION TO MARKET NEW DRUGS, THAT IS, BRAND NAME DRUGS
25   AND, ALSO, GENERIC DRUGS.  AND THE ORIGINAL HATCH-WAXMAN ACT
```

1  WAS PASSED IN ABOUT 1984.

2           THE ACT OF INFRINGEMENT HERE INVOLVES THE FILING OF
3  A SO-CALLED ABBREVIATED NEW DRUG APPLICATION WITH A REQUEST
4  TO MARKET THE GENERIC DRUG BEFORE THE PATENTS THAT ARE LISTED
5  IN THE ORANGE BOOK FOR THE BRAND NAME DRUG EXPIRE.  SO, IT'S
6  CALLED A "PARAGRAPH 4 CERTIFICATION."
7           UNDER THESE CIRCUMSTANCES, BY STATUTE, THE GENERIC
8  DRUG FILER GIVES THE PATENT HOLDER A NOTICE LETTER.  AND THE
9  PATENT HOLDER HAS 45 DAYS IN WHICH TO FILE SUIT TO TRIGGER
10 OTHER PROVISIONS OF THE HATCH-WAXMAN ACT, WHICH DELAY FDA
11 FINAL APPROVAL, BUT NOT THE FDA EXAMINATION OF THE
12 APPLICATION FOR 30 MONTHS, OR A COURT DECISION FINDING THE
13 PATENT INVALID OR NOT INFRINGED, WHICHEVER COMES SOONER.
14           BECAUSE OF THE 45-DAY PERIOD -- AND ALTHOUGH THE
15 DEFENDANTS PROVIDED US WITH SOME INFORMATION, WE DID NOT --
16 WE, OF COURSE, HAVE NOT -- HAD NOT SEEN WHEN WE FILED THE
17 COMPLAINT THE ENTIRE ABBREVIATED NEW DRUG APPLICATION THAT
18 WAS FILED WITH FDA.  AND, SO, WE HAD -- WHEN WE FILED THE
19 COMPLAINT, THE COMPLAINT SAYS WE NEED DISCOVERY TO DETERMINE
20 INFRINGEMENT.
21           DEFENDANT HAS PRODUCED THE "ANDA".  AND WE HAVE
22 REVIEWED IT.  WE NEED TO GET A PROTECTIVE ORDER AGREED ON AND
23 ENTERED SO THAT WE CAN HAVE AN EXPERT HELP US.  BUT,
24 BASICALLY, WE DON'T KNOW EVERYTHING WE NEED TO KNOW RIGHT NOW
25 ABOUT THE ACCUSED PRODUCT.  AND THAT'S WHAT MAKES THIS KIND

```
                                                           7

 1   OF LAWSUIT DIFFERENT FROM THE NORMAL PATENT INFRINGEMENT
 2   LAWSUIT.  AND THIS GOES DIRECTLY TO THE APPLICATION OF THE
 3   RULES FOR THE NORTHERN DISTRICT OF CALIFORNIA.
 4           NORMALLY, WHEN YOU FILE A PATENT INFRINGEMENT
 5   ACTION, YOU'VE GOT A SAMPLE OF THE ACCUSED PRODUCT.  YOU
 6   EXAMINE IT.  YOU MEET WITH EXPERTS.  AND YOU KNOW A LOT ABOUT
 7   THE ACCUSED PRODUCT BEFORE YOU FILE THE LAWSUIT.  AND UNDER
 8   THOSE CIRCUMSTANCES YOU'RE IN A POSITION TO TELL THE OTHER
 9   SIDE WHAT CLAIMS YOU THINK ARE INFRINGED AND EVEN WHAT CLAIM
10   TERMS YOU THINK MIGHT BE AT ISSUE.
11           IN THIS CASE THAT IS -- THAT IS NOT TRUE HERE.  WE
12   HAVE LOOKED AT -- WE HAVE LOOKED AT THE ABBREVIATED NEW DRUG
13   APPLICATION.  AND WITH RESPECT TO THE CLAIMS OF THE TWO
14   PATENTS IN SUIT WE FIND THAT THERE IS INFORMATION THAT IS NOT
15   IN THE ABBREVIATED NEW DRUG APPLICATION.  SO, WE'RE GOING TO
16   HAVE TO GET IT THROUGH DISCOVERY.  AND WE'RE GOING TO HAVE TO
17   GET AN EXPERT TO LOOK AT IT.
18           THE PATENTS IN SUIT -- AND THERE ARE TWO OF THEM --
19   COVER A ONCE-A-DAY FORMULATION FOR AN ANTIDEPRESSANT.  THE
20   NAME OF THE ANTIDEPRESSANT, THE ACTIVE INGREDIENT IS
21   BUPROPION.  AND THE BRAND NAME UNDER WHICH IT'S MARKETED IS
22   WELLBUTRIN XL.  THE INVENTION HERE -- THE PRIOR PATENTS THAT
23   -- AND THE PRIOR FORMULATION THAT WAS MARKETED BY OUR
24   LICENSEE, GLAXO-SMITHKLINE, WAS A TWICE-A-DAY FORMULATION.
25   AND BEFORE THAT IT WAS FOUR TIMES A DAY.  SO, THE PATENT
```

8

1  COVERS NOT THE ACTIVE INGREDIENTS BUT THE FORMULATION WHICH
2  ENABLES SOMEBODY TO TAKE IT JUST ONCE A DAY.
3          THESE TYPES OF FORMULATIONS -- AND BIOVAIL --
4  BIOVAIL IS A DRUG COMPANY. IT'S IN CANADA. AND BIOVAIL HAS
5  AN EXPERTISE IN EXTENDED-RELEASE FORMULATIONS.
6          IT IS -- IF YOU MAKE AN EXTENDED-RELEASE
7  FORMULATION FROM ONE ACTIVE INGREDIENT, CHANCES ARE AND
8  ALMOST PROBABLY IT WILL NOT WORK FOR ANOTHER ACTIVE
9  INGREDIENT. THERE'S A LOT OF TRIAL AND ERROR. THERE'S A LOT
10 OF SCIENCE THAT GOES INTO DEVELOPING A ONCE-A-DAY
11 FORMULATION.
12         BIOVAIL -- SMITHKLINE, RATHER -- BIOVAIL OWNS THE
13 PATENT. SMITHKLINE OWNS A NEW DRUG APPLICATION. AND IN
14 ORDER TO HAVE OBTAINED THIS NEW DRUG APPLICATION, SMITHKLINE
15 HAD TO PROVE THAT THE ONCE-A-DAY FORMULATION WAS SAFE AND
16 EFFECTIVE.
17         FOR PURPOSES OF THE FDA APPROVAL OF ANCHEN'S
18 ABBREVIATED NEW DRUG APPLICATION, CALLED "ANDA," ANCHEN HAS
19 TO PROVE THAT ITS FORMULATION IS BIOEQUIVALENT TO THE
20 FORMULATION MARKETED BY GLAXO-SMITHKLINE AND THE FORMULATION
21 THAT IS COVERED BY BIOVAIL'S PATENTS.
22         IN THE NOTICE LETTER ANCHEN TOLD US THAT THE TABLET
23 CORE CONTAINS A STABILIZING AMOUNT OF HYDROCHLORIC ACID. AND,
24 THEREFORE, THEY CLAIM THEY DIDN'T INFRINGE ANY CLAIM OF THE
25 PATENT BECAUSE THE CLAIMS OF THE PATENT SAID THAT THE

9

1  FORMULATION HAD TO BE FREE OF STABILIZER.
2           WHEN WE LOOKED AT THE ANDA, WHAT THEY TOLD THE FDA
3  WAS WE DON'T HAVE ANY HYDROCHLORIC ACID IN OUR FORMULATION.
4  WE USE IT IN MANUFACTURING, BUT IT'S ALL -- IT ALL
5  EVAPORATES.
6           SO, WE NEED EXPERT -- NOT ONLY DO WE NEED THE
7  SERVICES OF AN EXPERT, WE NEED DISCOVERY TO FIND OUT IF THEY
8  TOLD THE FDA -- AND THIS IS JUST ONE EXAMPLE ON ONE CLAIM OF
9  THE TWO PATENTS.  IF THEY TOLD THE FDA THAT THEY DON'T HAVE
10 ANY HYDROCHLORIC ACID IN THE TABLET, THEN, HOW CAN THEY BE
11 TELLING US THAT THEY HAVE HYDROCHLORIC ACID IN THE TABLETS IN
12 SUFFICIENT QUANTITY TO ACT AS A STABILIZER.
13          SO, THE INFORMATION OBVIOUSLY IS SOMETHING WE'RE
14 GOING TO HAVE TO GET IN DISCOVERY.  WE'RE GOING TO HAVE TO
15 GET THEIR DEVELOPMENT DOCUMENTS.  WE'RE GOING TO HAVE TO TAKE
16 DEPOSITIONS.  AND WE'RE GOING TO NEED THE SERVICES OF AN
17 EXPERT.
18          CLAIM INTERPRETATION:  WHY CAN'T WE SAY WHAT THE
19 TERMS OF THE CLAIMS MEAN NOW AS IS REQUIRED BY THE NORTHERN
20 DISTRICT RULES.  WELL, <u>VIVATECHNOLOGIES</u>, A FEDERAL CIRCUIT
21 CASE, 200 F.3D 795 AT PAGE 803 SAYS THAT ONLY THOSE TERMS
22 NEED TO BE CONSTRUED THAT ARE IN CONTROVERSY.  AND WE WON'T
23 KNOW WHAT'S IN CONTROVERSY UNTIL WE GET DISCOVERY.  FIND OUT
24 WHAT THEIR FORMULATION IS.  GIVE THE OTHER SIDE OUR
25 INFRINGEMENT CONTENTIONS.  AND FIND OUT FROM THEM THROUGH

10

1  CONTENTION INTERROGATORIES WHY THEY SAY THEY DON'T INFRINGE.
2  AND THEN WE CAN NARROW DOWN WHAT TERMS APPEAR TO BE AT
3  ISSUE.
4        I HAVE AN ARTICLE HERE THAT WAS WRITTEN -- I CAN
5  HAND UP TO THE COURT.  IT'S RATHER LONG.  BUT IT'S WRITTEN BY
6  A DELAWARE LAWYER.  AND IT'S PROBABLY THE JURISDICTION WHERE
7  THERE ARE PERHAPS PER JUDGE MORE PATENT CASES THAN THERE ARE
8  HERE IN THE CENTRAL DISTRICT OF CALIFORNIA.
9        AND WHAT THE DISTRICT OF DELAWARE HAS CONCLUDED IS
10 THE CLAIM INTERPRETATION SHOULD BE POSTPONED UNTIL LATER IN
11 THE CASE BECAUSE OTHERWISE IT AMOUNTS TO NOTHING MORE THAN AN
12 EXERCISE IN SEMANTICS.  AND IT'S A BURDEN ON THE COURT.  AND
13 IT'S A BURDEN ON THE PARTIES BECAUSE ONLY THOSE CLAIMS --
14 WHAT HAPPENS IS YOU WIND UP DEFINING EVERY OTHER TERM IN THE
15 CLAIM.  AND IT'S NOT NECESSARY.  THERE ARE GOING TO BE A FEW
16 TERMS IN THESE CLAIMS THAT ARE GOING TO BE -- THAT PERHAPS
17 WILL NEED DEFINITION ONCE WE FIND OUT WHAT'S AT ISSUE.
18        WE SAY WE NEED A COUPLE OF MONTHS -- AT LEAST TWO
19 OR THREE MONTHS TO TAKE DISCOVERY.  FIND OUT WHAT THEIR
20 FORMULATION IS.  AND THEN WE CAN CONSTRUCT OUR INFRINGEMENT
21 CHART WHERE WE GIVE THE CLAIMS AND WE SAY WHY WE THINK THEY
22 ARE INFRINGED.  AND THEN ONCE WE KNOW WHAT THEIR CONTENTIONS
23 ARE WE CAN DO CLAIM INTERPRETATION.
24        AND THAT'S THE -- THAT HAS BEEN -- I'VE GOT A
25 COUPLE OF ORDERS I BROUGHT WITH ME.  AND I DON'T KNOW -- I

```
                                                              11
1    WILL HAND THEM UP IF YOUR HONOR WANTS THEM.  BUT THAT HAS
2    BEEN THE TYPE OF SCHEDULE THE COURTS HAVE ENTERED IN THE
3    CASES I HAVE HANDLED, INCLUDING ONE IN THE SOUTHERN DISTRICT
4    OF FLORIDA WHERE I HAVE A CASE PENDING ON THE SAME PATENTS.
5    THEY HAVE -- SO FOR THAT REASON WE WANT -- THAT REASON WE
6    THINK WE NEED MORE TIME IN THIS CASE.
7              NOW, WHAT -- HOW FAST -- HOW FAST DOES THIS CASE
8    NEED TO GO.  WELL, THE ISSUE IS -- THE ISSUE THAT'S ALWAYS
9    ARGUED BY DEFENDANTS IN THESE LAWSUITS IS THE FDA CAN'T GRANT
10   FINAL APPROVAL UNTIL THIS CASE IS OVER OR UNTIL 30 MONTHS
11   EXPIRES.  SO, WE WANT THE CASE TO BE DECIDED FAST.
12             AND WHILE THE FDA HAS ISSUED STATISTICS THAT ITS
13   MEDIAN TIME FOR APPROVAL IS 15.7 MONTHS, WE HAVE FOUND IN
14   SEVERAL CASES -- AND I HAVE A CHART I CAN HAND UP TO THE
15   COURT.  WE HAVE FOUND IN CASES INVOLVING EXTENDED-RELEASE
16   FORMULATIONS THAT FDA APPROVAL TAKES MUCH LONGER.  THE LAST
17   TWO CASES THAT I HANDLED FOR THIS CLIENT THE DEFENDANT'S
18   ABBREVIATED NEW DRUG APPLICATION TOOK MORE THAN 30 MONTHS FOR
19   THE FDA TO EXAMINE.  AND IN OTHER CASES INVOLVING -- IN OTHER
20   CASES IT HAS TAKEN MUCH LONGER.
21             SO -- AND ONE OF THE PROBLEMS THAT THESE ARE
22   COMPLICATED FORMULATIONS.  IT IS NOT OFTENTIMES THERE ARE
23   PROBLEMS.  THE FDA DETECTS PROBLEMS WITH THE STABILITY OF THE
24   FORMULATION.  AND IT DETECTS PROBLEMS WITH THE ABILITY OF THE
25   GENERIC MANUFACTURER TO MANUFACTURE ON A COMMERCIAL SCALE AS
```

```
                                                              12
 1   OPPOSED TO A PILOT SCALE THAT'S USED FOR THE CLINICAL STUDIES
 2   THAT ARE USED TO SUPPORT THE ABBREVIATED NEW DRUG
 3   APPLICATION.
 4         SO, TO SUMMARIZE, YOUR HONOR, THE REASON WE PROPOSE
 5   THE SCHEDULE WE PROPOSE IS BECAUSE WE BELIEVE THAT WE NEED --
 6   WE ABSOLUTELY NEED DISCOVERY BEFORE WE FIND OUT WHAT THEIR
 7   FORMULATION IS SO WE CAN FIND OUT WHAT CLAIMS ARE AT ISSUE
 8   AND WHAT CLAIMS AREN'T AT ISSUE.
 9         THEIR NOTICE LETTER HAS TOLD US -- HAS GIVEN A
10   SHORT SYNOPSIS OF WHY THEY SAY THEY DON'T INFRINGE.  BUT IT
11   HASN'T GIVEN US ALL THE INFORMATION FOR ALL OF THE CLAIMS.
12   SO, WE ARE GOING TO NEED DISCOVERY SO THAT WE CAN FIND OUT
13   WHAT CLAIMS WE THINK ARE INFRINGED.  WE ARE GOING TO NEED THE
14   SERVICES OF AN EXPERT TO FIND OUT WHY WE THINK THEY'RE
15   INFRINGED.  THE EXPERT MAY NEED TO DO SOME TESTING ON SOME OF
16   THEIR SAMPLES AND PROBABLY WILL.  AND WE'RE GOING TO NEED
17   TIME FOR THAT.
18         THANK YOU, YOUR HONOR.
19         THE COURT:  THANK YOU.
20         MR. MOONEY:  YOUR HONOR, JOHN MOONEY FOR THE
21   DEFENDANT ANCHEN PHARMACEUTICALS.
22         I THINK YOUR INITIAL QUESTION WAS WHY DID WE
23   PROPOSE THE TIMES FOR THE TRIAL DATE THAT WE DO.  I HEARD A
24   LOT OF THINGS -- I THINK THE BASIC ISSUE THAT IS PROBABLY
25   OVERLYING THIS CASE IF YOU WANT TO GET INTO THE REGULATORY
```

28

1           C E R T I F I C A T E

2

3       I, MARGARET J. BABYKIN, HEREBY CERTIFY THAT THE

4   FOREGOING IS A TRUE AND ACCURATE TRANSCRIPT FROM THE RECORD

5   OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

6

7

8   ___MJBabykin_____                    2.14.2006

9   MARGARET J. BABYKIN, CSR                    DATED