# EXHIBIT 1

```
 1           UNITED STATES DISTRICT COURT OF MARYLAND
                       SOUTHERN DIVISION
 2

 3

 4   -------------------------------x
     BIOVAIL CORPORATION, et al     :
 5                   Plaintiffs:
                                    :
 6                                  :
     vs                             : Civil Action:RWT-06-3355
 7                                  :
                                    :
 8   US FOOD & DRUG ADMINISTRATION:
     et al,                         :
 9                   Defendants:
     -------------------------------x
10

11                          Thursday, December 21, 2006
                            Greenbelt, Maryland
12
          The above-entitled action came on for a Motion for
13   Temporary Restraining Order before the HONORABLE ROGER
     W. TITUS, United States District Judge, in courtroom
14   2A, commencing at 10:12 a.m.

15       THIS TRANSCRIPT REPRESENTS THE PRODUCT
         OF AN OFFICIAL REPORTER, ENGAGED BY
16       THE COURT, WHO HAS PERSONALLY CERTIFIED
         THAT IT REPRESENTS THE PORTIONS OF TESTIMONY
17       AND PROCEEDINGS OF THE CASE AS RECORDED
         AND REQUESTED BY COUNSEL.
18

19

20

21

22

23  Tracy Rae Dunlap, RPR, CRR            (301) 344-3912
    Official Court Reporter
24

25
```

1 difficult and doubtful as to make them fair ground for
2 litigation and, thus, for more deliberate
3 investigation.
4      The importance of probability of success
5 increases as the probability of irreparable injury
6 diminishes.  And where the latter may be characterized
7 as simply possible, the former can be decisive.
8 Even so, it remains merely one strong factor to be
9 weighed alongside both the likely harm to the defendant
10 and the public interest.
11      Now, with those comments, let me address the
12 four Blackwelder factors.  As we stand here today, we
13 have the circumstance in which the ANDA of Impax has
14 already been approved by the FDA, and Teva has begun
15 commercially marketing it in reliance on that final
16 approval.  As a result, the harm or the vast bulk of
17 the harm that Biovail claims has already occurred, and
18 granting of injunctive relief may therefore be
19 problematical.
20      I also have to consider the nature of the harm.
21 In this case, the harm that is alleged, insofar as the
22 court can tell, is purely economic and is a nature that
23 if the plaintiff's prevail in their patent litigation
24 in the U. S. District Court in Philadelphia, there is a
25 remedy available to them in that court, should it

1 ultimately turn out that the drug, the distribution of
2 which has been authorized by the FDA, in fact infringes
3 patents held by the plaintiffs.
4    I'm also required to consider the likelihood of
5 irreparable harm to the defendant. I find, as to the
6 plaintiff, that it is at best borderline as to whether
7 there's irreparable harm to the plaintiff. On the
8 other hand, there are significant harms that could
9 apply to Teva and Impax, and I'll address the FDA in a
10 moment. As to them, they have manufactured this drug,
11 sent it out for distribution, there are expiration
12 dates will approach. Many of these drugs may become
13 useless and unsaleable, and that is a factor that would
14 run in favor of the intervening defendants.
15    There's also a question as to the balance of
16 hardship to the FDA, which is an agency charged by law
17 with protecting the public interest with the
18 distribution of safe drugs and also to promote through
19 this legislation, among others, legitimate competition
20 for the benefit of the consumer. So, I find that that
21 would weigh in favor of the defendant.
22    Now, on the question of likelihood of success.
23 There are a number of problems that the court sees that
24 make the likelihood of success for the plaintiff
25 problematical. The matter of the incorrect plaintiff

```
 1 in Philadelphia is not a minor matter.  It is, in the
 2 context of the Philadelphia litigation, a minor matter
 3 because that is a forum in which the patent rights of
 4 the patent holder and those against whom the patent
 5 holder has asserted rights can and will be adjudicated,
 6 and it is appropriate that the proper parties be before
 7 the United States District Court for the Eastern
 8 District of Pennsylvania.
 9         That is not the issue here.  The issue here is
10 whether the holder of the patent initiated litigation
11 within the requisite period of time.  Those who engage
12 in corporate law simply cannot have it both ways.  They
13 are free to establish corporate structure, transfer
14 assets, create new corporations, merge, consolidate,
15 liquidate at will and, in the absence of fraudulent
16 purpose, courts are required to respect the corporate
17 forum in whatever manner it may be expressed.  But when
18 the entity that held the patent was dissolved and all
19 of its assets transferred to another entity, it is
20 simply not appropriate that the dissolved entity would
21 bring litigation or any other entity and that the only
22 one entitled to bring the action in the U. S. District
23 Court in Philadelphia is the holder of the patents,
24 which we now know is Biovail Laboratories International
25 SRL.  As a result of the corporate machinations that
```

1 took place in Barbados.

2      That it did not initially bring that case is not
3 a matter of inconsiderable moment. It is -- I believe
4 that the defect in the identity of the plaintiff is not
5 cured by the stipulation which substituted the correct
6 Biovail for a plaintiff in that case for purposes of an
7 amended complaint which itself was well after the 45-
8 day period, as well as the original filing, at least
9 with respect to the 300mg dosage.

10     It's been brought to my attention that perhaps
11 this would be a matter covered by rules that would
12 solve the problem, but I do not agree that substitution
13 of the patent holder at that late date would be one
14 that would save the filing deficiency, assuming that
15 the entire complaint is originally filed timely in this
16 case because, as Wright and Miller point out in
17 discussing this rule, Rule 25(c), which is what's been
18 pointed out to me -- I'm referring now to Wright and
19 Miller at Section 1958.

20     Rule 25(c) speaks to the situation in which
21 there is any transfer of interest during the pendency
22 of an action. If an interest has been transferred
23 prior to the commencement of this suit, Rule 17,
24 requiring that an action be brought in the name of the
25 real party in interest and defining capacity to sue and

1 be sued is controlling and that after suit is brought,
2 Rule 25(c) becomes the relevant provision.
3        Here the corporate machinations took place
4 before this complaint was filed and Rule 25(c) has
5 little, if any, relevance to the question of how one
6 treats that action as of the date it was filed.  As of
7 the date that action was filed, it was brought by an
8 entity that no longer existed.  It had been dissolved,
9 and that is something that took place not during but
10 prior to the pendency of the action, unless I've missed
11 my dates.  So it is not without some significance that
12 the wrong Biovail brought the case and that later, by
13 stipulation, the correct Biovail was substituted.  I do
14 not believe that that would relate back, since it was a
15 change made -- it was a matter done prior to the
16 initiation of the case, whereas Rule 25 contemplates
17 dealing with the situation that the transfer like that
18 would happen during the pendency of the litigation.
19        That then brings us to the question of the
20 compliance with the ANDA requirements in Section 355(j)
21 of Title 21 of the U. S. Code.  Now, the relevant dates
22 in this case are that on November 30, Impax submitted
23 an ANDA for a generic version of 150mg Wellbutrin XL to
24 the FDA.  It accompanied that application with a
25 Paragraph IV patent certification identifying patents

1 which had been referred to in the pleadings here as the
2 341 and the 327 patents as being invalid, unenforceable
3 or will not be infringed by the manufacture, use or
4 sell of the 150mg extended-release Bupropion HCL
5 tablets.
6         On December 28, 2004, Impax submitted an
7 amendment providing for the addition of a 300mg
8 strength. It submitted another Paragraph IV patent
9 certification to the same effect, this time referring
10 to the 300mg tablets.
11        By letter dated January 20, Impax gave Biovail
12 notice of its Paragraph IV certification seeking
13 approval of its generic 150mg release tablets. Biovail
14 received that notification on January 24. Then on
15 January 24 Impax gave Biovail notice of its paragraph
16 certification filed with its amendment which sought to
17 add the approval of its 300mg tablet, and that was
18 received on January 26, 2005.
19        On March 7, two days after Biovail received the
20 250mg notice, it filed the infringement action in the
21 Eastern District of Pennsylvania. That infringement
22 action identified on the first page in Paragraph 1 the
23 ANDA for 150mg extended-release tablets. It further,
24 on Page 3, in Paragraph 12, again mentioned 150mg
25 extended-release tablets twice in the same Paragraph

1  12.

2       So, there's going to be little question but that
3  what was initiated by Biovail in the Eastern District
4  of Pennsylvania related to the actions taken by Impax
5  in its ANDA application for the 150mg extended-release
6  tablets.
7       On April 7, 2005, 72 days after receiving the
8  300mg notice, Biovail amended its patent infringement
9  action, and that amendment stated that it was now
10 seeking relief under patent laws for the 150mg and
11 300mg extended-release tablets, and the amended
12 complaint for the first time referenced the second
13 notice letter.
14      The question, thus, before the court, is what is
15 the effect of this sequence of events that I've just
16 outlined in terms of the 30-month hold that the statute
17 applies to the FDA when approving an ANDA application.
18      As I mentioned earlier, Biovail seeks to treat
19 the original complaint as essentially dealing with all
20 forms of the Bupropion XL tablets, while the defendants
21 assert that that is not correct and that the notice
22 that was given, the listed drugs are all listed by
23 strength and that there's no question but the original
24 notification for 150mg and the filing of a suit within
25 42 days of that triggered the 30-month period in which

1  the approval of the FDA may not be give.  But, the
2  300mg notice was given, and it was not until 72 days
3  later that Biovail amended its application and now
4  seeks to have the court disregard the 150 versus 300mg
5  provisions.
6        I conclude that I cannot ignore that
7  distinction.  As I have already indicated, in some of
8  the papers that have been submitted to me -- they're
9  very helpful papers -- this issue has been addressed in
10 a number of cases, including the Apotex case that I
11 quoted from previously, and when you look at the
12 language of the statute, as was pointed out by counsel
13 for the Justice Department when first addressing the
14 court, that it's not that complicated.  You pick the
15 statute up and take a look at it, and this statute uses
16 terms -- terms of art, terms that are used in the
17 trade, terms that are used with regularity by the
18 agency, and they are not without significance.
19       The term "listed drug" is not something that was
20 dreamed up by the agency.  It's what was dreamed up by
21 Congress.  The agency has taken that term and used it
22 and given it a very subtle meaning.  And when you look
23 at the language of the statute in terms of what gets
24 protected and what gets deferred for 30 months, it's
25 pretty clear that it relates to the drug with respect

1  to which the certification is made, and in the statute
2  itself it refers to strengths and, not surprisingly,
3  the FDA, in administering this statute and establishing
4  a system of listed drugs, has listed them separately by
5  strength, and it is for the sake of those who are not
6  expert in medical matters obvious that two 250mg
7  tablets of aspirin are used for something different
8  than 80mg taken at night to keep my circulatory system
9  running well and that they have different
10 characteristics relating to each.
11         I conclude, on the basis of what I've just said,
12 that the motion for temporary restraining order and
13 preliminary injunction should and must be denied, and I
14 will therefore enter an order that recites --
15 incorporates my oral ruling, and we'll get you out of
16 here today.
17         Now, I have a question for you.  Does the
18 plaintiff wish to keep this case going beyond this
19 stage?  You may want to think about that.  The reason I
20 ask is that if we're to proceed further, there needs to
21 be answers filed to this complaint.  Once they're
22 filed, then we go through discovery and so forth.
23 Events in Philadelphia may change that.  I don't know.
24         I do want to point out one thing to both sides.
25 Cases like this are best resolved if they can be

1  voluntarily by parties, and I'm here to decide cases
2  for you, and I'll do that with or without a jury, but I
3  want to make sure everyone in this courtroom -- you may
4  not all be regulars to this courthouse -- know that
5  this court uses the magistrate judges of this court for
6  mediation.  Mediation services of our magistrate judges
7  is free, so the price is right.
8          The magistrate judges of this court are good.
9  I, as a practitioner, was on the selection panel for
10 all three of the magistrate judges that got here before
11 me; one got here after me.  I speak of the virtues of
12 our magistrate judges fondly, because they helped me
13 resolve some awful cases.  The last case I -- ugly last
14 case -- this is in my category of "low volume of ugly
15 messes."  A case I settled was Consumer Products Safety
16 Commission versus Wal-Mart.  I won't tell you who I
17 represented, but that was not easy, and so federal
18 agencies can resolve cases with very big companies and
19 now we've got more people in this fight.  So, all I'll
20 point out to you is that you may want to seriously
21 consider whether there's a way to resolve this which, I
22 assume, is primarily a matter between the plaintiffs
23 and the intervening defendants.  The agency is probably
24 not as happy a participant in that process as the
25 others, but I just want to point that out to you

```
 1  because it would be delightful if you could have some
 2  discussions with each other that would resolve this, as
 3  well as Philadelphia, and I'm sure Judge Brody would be
 4  delighted if you took that case off her hands, too.
 5          Those are my musings on this wonderful statute
 6  and how it's been applied by the agency, and I wish you
 7  all Happy Holidays.  Thank you.
 8                  (Off the record at 2:37 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                     CERTIFICATE

 2

 3       I, Tracy Rae Dunlap, RPR, CRR, an Official Court
 4  Reporter for the United States District Court of
 5  Maryland, do hereby certify that I reported, by machine
 6  shorthand, in my official capacity, the proceedings had
 7  and testimony adduced upon the Motion for Temporary
 8  Restraining Order Proceedings in the case of BIOVAIL
 9  CORPORATION, et al v U.S. FOOD & DRUG ADMINISTRATION,
10  et al, Civil Action Number RWT-06-3355, on December 21,
11  2006.
12
13       I further certify that the foregoing 102 pages
14  constitute the official transcript of said proceedings,
15  as taken from my machine shorthand notes, of said
16  proceedings.
17
18       In witness whereof, I have hereto subscribed my
19  name, this 22nd day of December 2006.
20
21
22                          _____
                            TRACY RAE DUNLAP, RPR CRR
23                          OFFICIAL COURT REPORTER
24
25
```